CARMELA T. PAGAY (State Bar No. 195603)
ctp@lnbyb.com
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

Attorneys for Plaintiff
Timothy J. Yoo, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>JENNIFER VANESSA RODRIGUEZ,<br><br>Debtor. | Case No. 2:16-bk-10821-BR<br><br>Chapter 7 |
| TIMOTHY J. YOO, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>MARIO ALBERTO LEON, JR.,<br><br>Defendant. | Adv. No. 2:16-ap-_____-BR<br><br>**COMPLAINT FOR:**<br><br>**(1) AVOIDANCE OF FRAUDULENT TRANSFER;**<br>**(2) RECOVERY OF AVOIDED TRANSFER; AND**<br>**(3) TURNOVER OF PROPERTY**<br><br>**[11 U.S.C. §§ 542, 544, 548 and 550]**<br><br>Date: [TO BE SET BY SUMMONS]<br>Time:<br>Place: Courtroom 1668<br>Roybal Federal Building<br>255 E. Temple Street<br>Los Angeles, CA |

Plaintiff Timothy J. Yoo, Chapter 7 Trustee (the "Plaintiff" or "Trustee") for the bankruptcy estate of *In re Jennifer Vanessa Rodriguez* avers and complains, by way of this Complaint, as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and 11 U.S.C. §§ 542, 544, 548, and 550 and Local Rules and Orders of the United States District Court for the Central District of California governing the reference and conduct of proceedings arising under or related to cases under Title 11 of the United States Code, including General Order No. 13-05, dated July 1, 2013.

2. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

3. Venue is proper in this Court under 28 U.S.C. § 1409(a) as this adversary proceeding arises under and in connection with a case under Title 11 which is pending in this district.

**PARTIES**

4. On January 22, 2016 (the "Petition Date"), Jennifer Vanessa Rodriguez (the "Debtor") commenced this case by filing a Voluntary Petition under Chapter 7 of the Bankruptcy Code.

5. Thereafter, Plaintiff Timothy J. Yoo, being duly-qualified, was appointed and presently is the acting Chapter 7 Trustee of the Debtor's bankruptcy estate.

6. Plaintiff is informed and believes and based thereon alleges that defendant Mario Alberto Leon, Jr. ("Mario") is an individual residing in Los Angeles County, California and is subject to the jurisdiction of this Court.

7. Plaintiff is informed and believes and based thereon alleges that Mario is the cousin of the Debtor's former husband.

///

## GENERAL ALLEGATIONS

8. Plaintiff is informed and believes and based thereon alleges that on or about August 14, 2012, the Debtor acquired the real property located at 37783 42nd Street, #E, Palmdale, California 93552 (the "Property") from Mario via Grant Deed from "Mario Leon, a married man, as his sole and separate property," to "Jennifer Rodriguez, an unmarried woman," which was recorded as Inst. No. 20121207768 in the Los Angeles County Recorder's Office. A true and correct copy of the Grant Deed is attached hereto as **Exhibit A.** The Grant Deed shows that documentary tax of $220 was paid.

9. Plaintiff is informed and believes and based thereon alleges that on or about August 14, 2012, the Debtor caused to be recorded against the Property as Inst. No. 20121207769 in the Los Angeles County Recorder's Office a Deed of Trust in favor to secure an obligation in favor of Mortgage Management Consultants, Inc. in the amount of $183,150. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit B.** The Debtor is the only borrower listed on the Deed of Trust.

10. Plaintiff is informed and believes and based thereon alleges that the Debtor took the mortgage deduction for the Property on her 2014 tax return.

11. Plaintiff is informed and believes and based thereon alleges that on or about March 25, 2015, the sale of the Property from the Debtor to Javance N. Baker and Monique S. Baker closed.

12. Plaintiff is informed and believes and based thereon alleges that the foregoing sale resulted in net proceeds of $92,496.57 (the "Proceeds"). A true and correct copy of the Settlement Statement dated March 25, 2015 from Pacific Trust Escrow, Inc. is attached hereto as **Exhibit C**. The Settlement Statement lists only the Debtor as seller.

13. Plaintiff is informed and believes and based thereon alleges that the Proceeds were deposited into the Debtor's Bank of America account # xxxx xxxx 0694 (the "BofA Account") on March 26, 2015.

14. Plaintiff is informed and believes and based thereon alleges that on March 30, 2015, the Debtor caused to be transferred the amount of $92,581.57, which includes the Proceeds from the BofA Account to a separate bank account in the name or held for the benefit of Mario (the "Transfer").

15. The Transfer was a transfer of an interest of the Debtor in the Proceeds.

16. The Transfer was made for no consideration.

17. On the Petition Date, the Debtor filed her Schedules of Assets and Liabilities (the "Schedules") and signed it under the penalty of perjury.

18. According to the Debtor's Schedule A/B, the Debtor's assets had a fair market value of only $21,404, some of which was claimed exempt on the Debtor's Schedule C.

19. According to the Debtor's Schedules E and F, the Debtor's liabilities at the time of the Transfer totaled approximately $37,797.

**FIRST CLAIM FOR RELIEF**

(Avoidance and Recovery of Fraudulent Transfer Pursuant to
11 U.S.C. §§ 544(b) and 550(a) and California Civil Code § 3439.04(a)(1) and 3439.07)

20. Plaintiff realleges each and every allegation contained in paragraphs 1 through 19, inclusive, of this Complaint as if set forth fully herein.

21. Plaintiff is informed and believes and based thereon alleges that the Transfer was made with the actual intent to hinder, delay, or defraud any creditor of the Debtor.

22. Plaintiff is informed and believes and based thereon alleges that the following factors with respect to the Transfer show the actual intent of the Debtor:

a. The Transfer was made to an insider.

b. The Debtor failed to disclose the Transfer.

c. The Transfer rendered the Debtor totally judgment proof as after the Transfer, the Debtor's liabilities exceeded her nonexempt assets.

d. The Debtor received no consideration for the Transfer.

e. The Debtor was insolvent or became insolvent shortly after the Transfer was made in that the sum of the Debtor's debts exceeded all of the Debtor's nonexempt assets.

f. The Debtor had incurred substantial debts before and after the time of the Transfer.

23. Plaintiff is informed and believes and based thereon alleges that there was a creditor in existence at the time of the Transfer that holds an allowable unsecured claim against the Debtor.

24. The Transfer constitutes an avoidable transfer under California Civil Code §3439.04(a)(1), and is therefore avoidable by Plaintiff pursuant to 11 U.S.C. 544(b).

**SECOND CLAIM FOR RELIEF**

(Avoidance and Recovery of Fraudulent Transfer Pursuant to
11 U.S.C. §§ 544(b) and 550(a) and California Civil Code § 3439.04(a)(2) and 3439.07)

25. Plaintiff realleges each and every allegation contained in paragraphs 1 through 24, inclusive, of this Complaint as if set forth fully herein.

26. Plaintiff is informed and believes and based thereon alleges that the Debtor made the Transfer to Mario without receiving a reasonably equivalent value in exchange for the Transfer as the Debtor received nothing from Mario in exchange for the Transfer.

27. Plaintiff is informed and believes and based thereon alleges that at the time the Debtor made the Transfer, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

28. Plaintiff is informed and believes and based thereon alleges that at the time the Debtor made the Transfer, the Debtor intended to incur, or believed or reasonably should have believed that she would incur, debts beyond her ability to pay as they became due.

29. The Transfer constitutes a fraudulent transfer under 11 U.S.C. §§ 544 and 550 and California Civil Code §§ 3439 et seq. and, therefore, is avoidable by the Trustee.

**THIRD CLAIM FOR RELIEF**

(Avoidance and Recovery of Fraudulent Transfer Pursuant to

11 U.S.C. §§ 544(b) and 550(a) and California Civil Code § 3439.05 and 3439.07)

(Against Mario)

30. Plaintiff realleges each and every allegation contained in paragraphs 1 through 29, inclusive, of this Complaint as if set forth fully herein.

31. Plaintiff is informed and believes and based thereon alleges that the Debtor made the Transfer to Mario without receiving a reasonably equivalent value in exchange for the Transfer as the Debtor received nothing from Mario in exchange for the Transfer.

32. Plaintiff is informed and believes and based thereon alleges that the Debtor was insolvent at the time of the Transfer or became insolvent as a result of the Transfer in that the sum of the Debtor's debts exceeded all of the Debtor's nonexempt assets.

33. The Transfer constitutes a fraudulent transfer under 11 U.S.C. §§ 544 and 550 and California Civil Code §§ 3439 et seq. and, therefore, is avoidable by the Trustee.

**FOURTH CLAIM FOR RELIEF**

(Avoidance and Recovery of Fraudulent Transfer Pursuant to

11 U.S.C. §§ 548(a)(1)(A) and 550(a))

34. Plaintiff realleges each and every allegation contained in paragraphs 1 through 33, inclusive, of this Complaint as if set forth fully herein.

35. Plaintiff is informed and believes and based thereon alleges that the Transfer was made within two years before the Petition Date.

36. Plaintiff is informed and believes, and based thereon alleges that the Transfer was made by the Debtor with the actual intent to hinder, delay or defraud any entity to which the Debtor was or became, on or after the date that the Transfer was made, indebted.

37. Plaintiff is informed and believes and based thereon alleges that the following factors with respect to the Transfer show the fraudulent intent of the Debtor:

a. The Transfer was made to an insider.

b. The Debtor failed to disclose the Transfer.

c. The Transfer rendered the Debtor totally judgment proof as after the Transfer, the Debtor's liabilities exceeded her nonexempt assets.

d. The Debtor received no consideration for the Transfer.

e. The Debtor was insolvent or became insolvent shortly after the Transfer was made in that the sum of the Debtor's debts exceeded all of the Debtor's nonexempt assets.

f. The Debtor had incurred substantial debts before and after the time of the Transfer.

38. The Transfer constitutes a fraudulent transfer under 11 U.S.C. § 548(a)(1)(A) and is, therefore, avoidable by Plaintiff.

## FIFTH CLAIM FOR RELIEF

(Avoidance and Recovery of Fraudulent Transfer Pursuant to

11 U.S.C. §§ 548(a)(1)(B) and 550(a))

39. Plaintiff realleges each and every allegation contained in paragraphs 1 through 38, inclusive, of this Complaint as if set forth fully herein.

40. Plaintiff is informed and believes and based thereon alleges that the Debtor received less than reasonably equivalent value in exchange for the Transfer as the Debtor received nothing from Mario in exchange for the Transfer.

41. Plaintiff is informed and believes and based thereon alleges that by virtue of the Transfer, the Debtor was insolvent or became insolvent as a result of such transfer in that the sum of the Debtor's debts exceeded all of the Debtor's nonexempt assets.

42. Plaintiff is informed and believes and based thereon alleges that by virtue of the Transfer, the Debtor was engaged in or was about to engage in a business or a transaction for which any property remaining with the Debtor was an unreasonably small capital.

///

43. Plaintiff is informed and believes, and based thereon alleges that by virtue of the Transfer, the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

44. Plaintiff is informed and believes, and based thereon alleges that by virtue of the Transfer, the Debtor made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

45. The Transfer constitutes a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B) and therefore is avoidable by Plaintiff.

**SIXTH CLAIM FOR RELIEF**

(To Recover Avoided Transfer - 11 U.S.C. § 550)

46. Plaintiff realleges each and every allegation contained in paragraphs 1 through 45, inclusive, of this Complaint as if set forth fully herein.

47. Plaintiff is informed and believes, and based thereon alleges, that Mario was the initial transferee of the Transfer, or that he was the individual for whose benefit the Transfer was made, or that he was the immediate or mediate transferee of the initial transferee receiving the Transfer.

48. Upon avoidance of the Transfer, Plaintiff is entitled to recover from Mario the Property transferred or the value of the Property transferred, for the benefit of the Debtor's estate pursuant to 11 U.S.C. § 550.

**SEVENTH CLAIM FOR RELIEF**

(For Turnover of Property - 11 U.S.C. § 542)

49. Plaintiff realleges each and every allegation contained in paragraphs 1 through 48, inclusive, of this Complaint as if set forth fully herein.

50. To the extent Plaintiff is successful in avoiding the Transfer, the Proceeds constitute property of the estate pursuant to 11 U.S.C. § 541.

51. Plaintiff is informed and believes and based upon such information and belief alleges that Mario is in possession of the Proceeds.

52. The Proceeds should be turned over to the Trustee pursuant to 11 U.S.C. § 542 so that they can be used for the benefit of the Debtor's creditors.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment as follows:

A. For a judgment by the Court avoiding the Transfer and recovering the Transfer or its value for the benefit of the Debtor's bankruptcy estate;

B. For a judgment compelling Mario to turn over the Proceeds to the Trustee pursuant to the Trustee pursuant to 11 U.S.C. § 542; and

C. For such other and further relief as the Court deems just and proper.

DATED: December 20, 2016

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

By: [signature]
CARMELA T. PAGAY
Attorneys for Plaintiff
Timothy J. Yoo, Chapter 7 Trustee

# Exhibit A

This page is part of your document - DO NOT DISCARD

**20121207768**

Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

08/14/12 AT 08:00AM

| | |
|---|---|
| FEES: | 22.00 |
| TAXES: | 220.00 |
| OTHER: | 0.00 |
| PAID: | 242.00 |

LEADSHEET

201208140220006

00006273420

004206602

SEQ:
15

DAR - Title Company (Hard Copy)

THIS FORM IS NOT TO BE DUPLICATED

r27

E146767

RECORDING REQUESTED BY:
ADVANTAGE TITLE INC

AND WHEN RECORDED MAIL TO:

JENNIFER RODRIGUEZ
37783 42ND STREET., #E,
PALMDALE, CA 93552

08/14/2012
*20121207768*

THIS SPACE FOR RECORDER'S USE ONLY:

Title Order No.: Escrow No.: L-028914-JB

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX is $220.00 CITY TRANSFER TAX $
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area [X] City of PALMDALE AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**MARIO LEON, a Married Man, as his sole and separate property**

hereby GRANT(s) to:

**JENNIFER RODRIGUEZ**, AN UNMARRIED WOMAN

the real property in the City of PALMDALE, County of Los Angeles, State of California, described as:
LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
Also Known as: 37783 42ND STREET., #E, PALMDALE, CA 93552
AP#: 3023-092-085

DATED June 4, 2012
STATE OF CALIFORNIA
COUNTY OF California
On 06/28/2012
before me, Joanna Vazquez,
A Notary Public in and for said State personally appeared
Maria Leon

Mario Leon
MARIO LEON

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

JOANNA VAZQUEZ
COMM. #1812718
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
My Comm. Expires September 11, 2012

Signature Joanna Vazquez (Seal)
MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE:

3

## EXHIBIT "A"

The land referred to in this Report is situated in the County of Los Angeles, State of California, and is described as follows:

Lot 83 of Tract Map No. 53221, in the City of Palmdale, County of Los Angeles, State of California, as per map recorded in Book 1306, Pages 47 through 50, in the Office of the County recorder of said County.

APN: 3023-092-085

# Exhibit B

**This page is part of your document - DO NOT DISCARD**

# 20121207769

**Pages: 0008**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/14/12 AT 08:00AM**

| | |
|---|---|
| FEES: | 58.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 58.00 |

LEADSHEET

201208140220006

**00006273421**

004206602

**SEQ:
16**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

E145707

r27

2

08/14/2012
*20121207769*

Advantage Title, Inc.
1207774

After Recording Return To:
MORTGAGE MANAGEMENT CONSULTANTS, INC.
ATTN: FINAL DOCUMENT DEPARTMENT
1008 W. AVENUE M-4, STE H
PALMDALE, CA 93551

Title Order No.: 310-1207774-30
Escrow No.: L028914-JB
LOAN #: V12033016

[Space Above This Line For Recording Data]

FHA Case No.
197-5981614-703

State of California

# DEED OF TRUST

MIN: 1003197-0000123705-5

THIS DEED OF TRUST ("Security Instrument") is made on AUGUST 1, 2012. The Trustor is JENNIFER RODRIGUEZ, AN UNMARRIED WOMAN

("Borrower").

The trustee is TITLE 365 COMPANY
801 NORTH BRAND BLVD #320, GLENDALE, CA 91203

("Trustee").

**"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, tel. (888) 679-MERS.
MORTGAGE MANAGEMENT CONSULTANTS, INC., A CORPORATION

("Lender") is organized and existing under the laws of CALIFORNIA,

LOAN #: V12033016 3

and has an address of 1008 W. AVENUE M-4, STE H, PALMDALE, CA 93551.

Borrower owes Lender the principal sum of ***ONE HUNDRED EIGHTY THREE THOUSAND ONE HUNDRED FIFTY AND NO/100********************************************* Dollars (U.S. $183,150.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on SEPTEMBER 1, 2042. The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in LOS ANGELES County, California:

LOT 83 OF TRACT MAP NO. 53221, IN THE CITY OF PALMDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1306, PAGES 47 THROUGH 50, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
APN #: 3023-092-085

which has the address of 37783 42ND STREET EAST, PALMDALE, [Street, City],

California 93552 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Initials: ______

LOAN #: V12033016 4

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 **et seq.** and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto. In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby

Initials: ______

assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument,

Initials: ______

6

foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.

Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to

Initials: ________

collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**21. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

**22. Beneficiary Statement.** Lender may collect a fee, not to exceed the maximum amount permitted by law for furnishing Beneficiary statement as provided by Section 2943 of the Civil Code of California .

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

- ☐ Condominium Rider
- ☐ Growing Equity Rider
- ☐ Planned Unit Development Rider
- ☐ Graduated Payment Rider
- ☐ Other(s) [specify]

Initials: CAEFHALD 0908

LOAN #: V12033016 8

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_______________________________ (Seal)
JENNIFER RODRIGUEZ

State of CALIFORNIA
County of LOS ANGELES

On August 2, 2012, before me, Winter Melgar-Notary Public (here insert name and title of the officer), personally appeared JENNIFER RODRIGUEZ, who proved to me on the basis of satisfactory evidence to be the person~~(s)~~ whose name~~(s)~~ is/~~are~~ subscribed to the within instrument and acknowledged to me that ~~he~~/she/~~they~~ executed the same in ~~his~~/her/~~their~~ authorized capacity~~(ies)~~, and that by ~~his~~/her/~~their~~ signature~~(s)~~ on the instrument the person~~(s)~~, or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_______________________________

WINTER MELGAR
COMM. # 1840081
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
COMM. EXPIRES APRIL 7, 2013
MGC1

(SEAL)

# Exhibit C

OMB Approval No. 2502-0265

# A. SETTLEMENT STATEMENT (HUD-1)

FINAL

Printed: March 25, 2015 03:31pm

| B. Type of Loan | | | |
|---|---|---|---|
| 1. [X]FHA 2. []RHS 3. []Conv. Unins.<br>4. []VA 5. []Conv. Ins. | 6. File Number<br>012802-TA | 7. Loan Number<br>400101370 | Mortgage Insurance Number<br>197-6990454-703 |

C. Note: This form is furnished to give you a statement of the actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(P.O.C.)" were paid outside of the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Javance N. Baker<br>Monique S. Baker<br>37783 42nd Street East<br>Palmdale, CA 93552 | Jennifer Rodriguez<br><br>5687 Hub Street<br>Los Angeles, CA 90042 | LOANDEPOT.COM,LLC DBA IMORTGAGE<br>4800 N. SCOTTSDALE ROAD SUITE 3800<br>SCOTTSDALE, AZ 85251 |

| G. PROPERTY LOCATION | H. Settlement Agent | |
|---|---|---|
| 37783 42nd Street East<br>Palmdale, CA 93552 | Pacific Trust Escrow, Inc.<br>39438 Trade Center Drive, Suite D, Palmdale, Ca 93551<br>Phone: (661) 265-0800 | |
| | Place of Settlement<br><br>39438 Trade Center Drive, Suite D<br>Palmdale, Ca 93551 | I. Settlement Date<br><br>Close Date<br>March 25, 2015 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract Sales Price | | 401. Contract sales price | 310,000.00 |
| 102. Personal Property | | 402. Personal property | |
| 103. Settl. Chrgs. to Borrower (line 1400) | 0.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town taxes | |
| 107. County Taxes | | 407. County Taxes at $2573.09/semi-annually from 03/25/2015 to 07/01/2015 | 1,372.31 |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | 0.00 | 420. Gross Amount Due to Seller | 311,372.31 |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposits or Earnest Money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan | | 502. Settl. chrgs. to seller (line 1400) | 33,535.04 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff to Cenlar | 176,223.34 |
| 205. | | 505. Buyer's off-set credit for Owner's Title Policy | 1,116.00 |
| 206. | | 506. Buyer's off-set credit for Documentary Transfer Tax | 341.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town taxes | | 510. City/Town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Recurring/non-recurring closing costs | 7,660.36 |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 0.00 | 520. Total Reductions in Amount Due Seller | 218,875.74 |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER | | 600. CASH AT SETTLEMENT FROM/TO SELLER | |
| 301. Gross Amounts due from Borrower (line 120) | 0.00 | 601. Gross amount due to Seller (line 420) | 311,372.31 |
| 302. Less amounts paid by/for Borrower (line 220) | 0.00 | 602. Less reductions in amount due Seller (line 520) | 218,875.74 |
| 303. Cash [ ] From Borrower [ ] To Borrower | 0.00 | 603. Cash [ X ] To Seller [ ] From Seller | 92,496.57 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collection, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

Party Paying POC Legend - (B*) Buyer/Borrower (S*) Seller (L*) Lender (LB*) Loan Broker [B]Buyer/Borrower [S]Seller

Escrow No.: [illegible] Printed: [illegible]

L. SETTLEMENT STATEMENT

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. | TOTAL REAL ESTATE BROKER FEES | | | |
| | Division of commission (line 700) as follows: | | | |
| 701. | Century 21 Yarrow and Associates $9,300.00 | | | |
| 702. | Re/Max All Pro $9,300.00 | | | |
| 703. | Commission paid at settlement | | | 18,600.00 |
| 704. | | | | |
| 800. | ITEMS PAYABLE IN CONNECTION WITH LOAN | | | |
| 801. | Our origination charge | (from GFE #1) | | |
| 802. | Your credit or charge (points) for the specific interest rate chosen | (from GFE #2) | | |
| 803. | Your adjusted origination charges | (from GFE #A) | | |
| 804. | Appraisal fee | (from GFE #3) | | |
| 805. | Credit report | (from GFE #3) | | |
| 806. | Tax service | (from GFE #3) | | |
| 807. | Flood certification | (from GFE #3) | | |
| 808. | Condo certification | (from GFE #3) | | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| 900. | ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. | Daily interest charges from | (from GFE #10) | | |
| 902. | Mortgage insurance premium for | (from GFE #3) | | |
| 903. | Homeowner's insurance | (from GFE #11) | | |
| 904. | | | | |
| 905. | | | | |
| 1000. | RESERVES DEPOSITED WITH LENDER | | | |
| 1001. | Initial deposit for your escrow account | (from GFE #9) | | |
| 1002. | Homeowner's insurance | | | |
| 1003. | Mortgage insurance | | | |
| 1004. | Property taxes | | | |
| 1005. | City taxes | | | |
| 1006. | Assessments | | | |
| 1007. | Misc. Impound | | | |
| 1008. | | | | |
| 1009. | Aggregate Adjustment | | | |
| 1100. | ESCROW AND TITLE CHARGES | | | |
| 1101. | Title services and lender's title insurance | (from GFE #4) | | |
| 1102. | Settlement or closing fee to Pacific Trust Escrow, Inc. | | | 1,255.00 |
| 1103. | Owner's title insurance | (from GFE #5) | | |
| 1104. | Lender's title insurance (plus Endorsements) | | | |
| 1105. | Lender's title policy limit $ | | | |
| 1106. | Owner's title policy limit $ | | | |
| 1107. | Agent's portion of the total title insurance premium $ | | | |
| 1108. | Underwriter's portion of the total title insurance premium $ | | | |
| 1109. | Sub Escrow Fee to Consumer's Title Company | | | 62.50 |
| 1110. | Wire Fee to Consumer's Title Company | | | 15.00 |
| 1111. | Escrow Fee to Pacific Trust Escrow, Inc. [S]$1,025.00 (to line 1102) | | | |
| 1112. | Processing Demands to Pacific Trust Escrow, Inc. [S]$50.00 (to line 1102) | | | |
| 1113. | Drawing Grant Deed to Pacific Trust Escrow, Inc. [S]$50.00 (to line 1102) | | | |
| 1114. | Overnigh/Messenger Fee to Pacific Trust Escrow, Inc. [S]$25.00 (to line 1102) | | | |
| 1115. | Additional Items, see Addendum [S]$35.00 | | | |
| 1200. | GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. | Government recording charges | (from GFE #7) | | |
| 1202. | Deed $ Mortgage $ Release $ | | | |
| 1203. | Transfer Tax | (from GFE #8) | | |
| 1204. | City/County tax/stamps | | | |
| 1205. | State tax/stamps | | | |
| 1206. | | | | |
| 1300. | ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. | Required services that you can shop for | (from GFE #6) | | |
| 1302. | Current Taxes 2nd Half 2014/15 to Consumer's Title Company | | | 2,573.09 |
| 1303. | Property Disclosure Report to First American Natural Hazard Disclosures | | | 74.95 |
| 1304. | Termite Inspection to High Desert Termite Co. | | | 80.00 |
| 1305. | Home Warranty to Old Republic Home Protection Company, Inc. | | | 385.00 |
| 1306. | Ca. Real Estate Withholding to Franchise Tax Board | | | 10,489.50 |
| 1307. | | | | |
| 1308. | | | | |
| 1400. | TOTAL SETTLEMENT CHARGES (ENTER ON LINES 103 SECTION J AND 502, SECTION K) | | 0.00 | 33,535.04 |

Party Paying POC Legend - (B*) Buyer/Borrower (S*) Seller (L*) Lender (LB*) Loan Broker [B]Buyer/Borrower [S]Seller

| Additional Items From 1100 Series | Borrower Debit | Seller Debit |
|---|---|---|
| **Escrow and Title Charges** | | |
| Wire Fee to Pacific Trust Escrow, Inc. [S]$35.00 (to line 1102) | | |
| Archive Fee to Pacific Trust Escrow, Inc. [S]$25.00 (to line 1102) | | |
| FTB to Pacific Trust Escrow, Inc. [S]$45.00 (to line 1102) | | |
| **Total to line 1115** | | |

| PAYOFF BREAKDOWN(S) | Borrower Debit | Borrower Credit | Seller Debit | Seller Credit |
|---|---|---|---|---|
| Payoff to Cenlar $176,223.34 (to line 504) | | | | |
| Principal Balance | | | 174,440.53 | |
| Interest on Principal Balance | | | 1,017.56 | |
| Escrow Overdraft | | | 331.35 | |
| Recording Fee | | | 36.00 | |
| Fax Fee(s) | | | 5.99 | |
| Earned MIP Premium | | | 342.56 | |
| Late Fee | | | 49.35 | |